

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HEATHER WILCOX,<br><br>               Plaintiff,<br><br>vs.<br><br>GRAND TARGHEE RESORT, LLC; GLT HOLDINGS,  and THOMAS DREW HORNE,<br><br>               Defendant. | Case No:  17-CV-64-F |

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 19). The Court has reviewed the motion, responses, and reply and heard oral arguments, and is fully informed in the premises. The Court's findings are as follows.

### BACKGROUND

Plaintiff Heather Wilcox was skiing at Grand Targhee Resort on December 20, 2014. Plaintiff was located at or around Teton Vista Traverse (TVT) and was complying with the "SLOW" ski sign when Defendant Thomas Drew Horne collided with Wilcox at a high rate of speed. At the time of the collision, Defendant Horne was an employee of Grand Targhee and was wearing a Grand Targhee jacket. As a result of the collision, Plaintiff suffered a broken fibula, an ACL tear in her left knee, and other physical and emotional injuries. Plaintiff brings claims for negligence and gross negligence against

Grand Targhee Resort, LLC and GLT Holdings LLC (known together as "Grand Targhee") and Thomas Drew Horne.

## DISCUSSION

Grand Targhee filed its Motion for Summary Judgment arguing that Plaintiff's claims are barred by the waiver and release signed by Plaintiff. "A federal court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). Therefore, Wyoming law applies in determining whether Plaintiff's claims are viable. The duty of the federal court is to "ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1100 (10th Cir. 2002) (citing *Cooperman*, 214 F.3d at 1164).

At the hearing on the motion for summary judgment, Defendant Grand Targhee argued for the first time that under *Campen v. Stone*, 635 P.2d 1121 (Wyo. 1981) it cannot be held liable for Defendant Horne's willful and wanton misconduct. The Court requested additional briefing from the parties regarding this new argument.

### Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). An issue is

"genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* The non-moving party is entitled to all reasonable inferences from the factual record, which is viewed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, to defeat summary judgment, a plaintiff must support the claim with more than conjecture and speculation. *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002).

*Validity of Waiver against Plaintiff Wilcox*

Defendants argue Plaintiff's signed a release which bars her claims against Defendants. (Doc. 20 at 2 [Def. Mot. Summ. J.]). There does not appear to be any dispute that as part of her purchase of a season pass Plaintiff signed the "GRAND TARGHEE RESORT FAMILY SEASON PASS AGREEMENT TO ASSUME ALL RISKS; RELEASE OF LIABILITY/AGREEMENT NOT TO SUE & INDEMNIFICATION AGREEMENT." (Doc. 20-5 at 1–2) ("Waiver"). Defendants argue that Plaintiff executed a valid, enforceable contract releasing her right to sue for damages. (Doc. 20 at 2).

In response, Plaintiff does not contest the validity of the Waiver. Instead, she argues Defendant Horne's conduct, as an employee of Grand Targhee, creates a question

3

of fact as to whether Defendants acted willfully and wantonly, voiding the waiver.[1] Specifically, she claims that Defendant Horne engaged in willful or wanton misconduct when he collided with Plaintiff. Defendants argue Plaintiff's claims do not allege willful or wanton misconduct and the record evidence does not support a finding that Defendants, through employee Horne, engaged in willful or wanton misconduct.

"Generally, specific agreement absolving participants and proprietors from negligence liability during hazardous recreational activities are enforceable, subject to willful misconduct limitations." *Schutkowski v. Carey*, 725 P.2d 1057, 1059–60 (citation omitted). However, "[w]here willful and wanton misconduct is shown, an otherwise valid release is unenforceable." *Milligan v. Big Valley Corp.*, 754 P.2d. 1063, 1068 (1988).

The Wyoming Supreme Court has defined willful and wanton misconduct as follows:

> "Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another."

*See also Danculovich v. Brown,* Wyo., 593 P.2d 187, 191 (1979), wherein we said that willful and wanton misconduct was

> "that which tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. It is not with the intent to cause injury or damage, but it must be more than mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadventure, or simple inattention."

---

[1] There is no dispute that Defendant Horne was employed by Grand Targhee Resort and was acting within the course and scope of his employment at the time of the collision. (Doc. 20 at 5 [Memo. in Supp. Mot. Summ. J.]).

*Milligan*, 754 P.2d at 1068.

Willful and wanton misconduct is "more aggravated than gross negligence." *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo. 1979). "In order to prove that an actor has engaged in willful misconduct, one must demonstrate that he acted with a state of mind that approaches intent to do harm." *Cramer v. Powder River Coal, LLC*, 204 P.3d 974, 979 (Wyo. 2009) (citation omitted).

Defendants argue the evidence does not suggest that Horne's speed constituted an "extreme departure" from ordinary care to demonstrate an intentional act of harm. (Doc. 20 at 12 [Memo. in supp. mot. summ. J.]). Defendants conclude the record does not contain evidence that Defendants "acted with extreme and outrageous conduct or with intentional disregard for the safety of others." (*Id.* at 13). Therefore, the waiver of liability precludes Plaintiff's claims against Defendants.

Plaintiff argues that Defendant Horne engaged in willful and wanton misconduct when he "recklessly sped out of control and violently impacted [Plaintiff] from behind." (Doc. 23 at 2). Plaintiff asserts Defendant Horne was traveling too fast in a "slow" zone, Plaintiff had the right of way, and Horne's path of travel made an arc near Plaintiff. Additionally, Plaintiff asserts Defendant Horne failed to maintain control and he had the responsibility to remain in control as shown by his training, the Skier's Responsibility Code, and Grand Targhee's posted rules. Additionally, Plaintiff asserts she had the right of way as the lower skier, the run was a "cat run" designed for low-to-moderate level skiers so he should have known there would be slower skiers on the run.

First, Plaintiff contends Horne "ignored the posted 'SLOW' signs and the conditions that a reasonable person, particularly a resort employee, would have known would likely result in harm" to others. (Doc. 23 at 16–17). The collision occurred on the TVT, a "cat track," or a green circle trail, designed for low-to-moderate level skiers. (Doc. 23 at 4 [Resp. to Mot. Summ. J.]; Doc. 24 at 6 [Penniman's Aff.]) Horne admitted that the collision occurred on a weekend just before Christmas, so more people were skiing than on other days. (Doc. 23-1 at 5). When changing from an upper post to a lower post, Grand Targhee designated three routes employees could use, including the TVT. (Doc. 23-1 at 4 [Horne's Depo.]). Thus, Plaintiff contends Horne traveled the TVT many times, so "he knew or should have known" he needed to proceed down the TVT with caution because he was likely to encounter skiers and snowboarders with lower ability levels. (Doc. 24 at 6).

Additionally, a "SLOW" sign was posted 300 feet above the collision and Horne acknowledged passing two "SLOW" signs on the TVT prior to the collision. (Doc. 23-5 at 6; Doc. 23-1 at 7). Plaintiff argues despite the "SLOW" signs, Horne was traveling at a high speed and failed to comply with the signs. Plaintiff asserts that Horne collided with her at a high speed in an area with "SLOW" signs. Horne acknowledged he saw Plaintiff and her family about 20–30 yards below him. Plaintiff stated the collision took place on an area of the TVT that was not "super steep," she had been stopped and had just started skiing again; making two small turns before the collision. (Doc. 23-3 at 6 [Pl.'s Depo.]) Horne collided with Plaintiff from behind and "took her leg out from underneath her." (Doc. 23-1 at 9 [Horne Depo.]). Wilcox's husband witnessed the collision and stated

Horne "was going so fast it was almost like seeing a damn train run over something." (Doc. 23-4 at 5 [Harley's Depo]). Horne stated he did not have time to stop and "went underneath her legs because [he] had turned [his] board sideways to try to stop, but there was not enough room at that time." (Doc. 23-1 at 9 [Horne's Depo]).

When the collision occurred, Plaintiff was on the left side of the trail and her husband and daughter were on the far right side. Horne stated he had room between Wilcox and her family members and "[t]hen she radically changed the way that she was skiing and cut to the right as [Horne] was making his pass." (Doc. 23-1- at 7). Regarding his responsibility to stay in control, Horne stated:

> I'm in control of what I'm doing as far as avoiding objects, people, what have you, but I don't know what they're doing. So I felt I was in control on the line that I picked until I was cut in front of as I was passing. And then because she cut over, it was not on the left side of the trail making small turns like she had been . . . She veered to the right after I picked my line, and then there was no time to stop.

(Doc. 23-1 at 7). While Horne explained that he picked his line between Heather Wilcox and her husband and child and there was plenty of room, Plaintiff asserts, "Horne's path made an arc more to the left side of the TVT even though there was more room on the right than the left, and his chosen path of travel took his closer to Heather Wilcox and it was only at the last second when it was too late due to his high rate of speed when he began to move right." (Doc. 23 at 6). Grand Targhee's Collision Report also reflects Horne's path close to Plaintiff. (Doc. 23-5 at 5). Plaintiff also contends she had the right-of-way as she was ahead of Horne.

7

Richard Penniman's affidavit states, "[i]t is common practice when one is overtaking other skiers and snowboarders ahead or below to call out to them to let them know of one's presence and relative position." (Doc.23-2 at 6 [Penniman's Aff.]). Grand Targhee employees receive training on the Skier's Responsibility Code and the Code is posted on the Grand Targhee trail maps. (Doc. 23-1 at 6 [Horne's Depo.]; Doc. 24 at 5 [Penniman's Aff.]). The Code states it is the skier or snowboarder's responsibility to "[a]lways stay in control and be able to avoid other skiers and objects" and "people ahead of you have the right of way. It is your responsibility to avoid them." (Doc. 23-2 at 7). Plaintiff argues Horne went down the TVT with excessive speed, his speed prevented him from being able to stop before colliding with Plaintiff; thus, Horne was not in control.

Plaintiff also analogizes the willful and wanton misconduct exception to the Ski Safety Act, citing Wyo. Stat. Ann. § 1-1-123.4–5. The Wyoming statute states that the individual "assumes the inherent risks of skiing and is legally responsible for damage, injury or death to himself . . . that results from the inherent risks in skiing." Wyo. Stat. Ann. § 1-1-123.4(a). However, "[a] skier is not precluded . . . from suing another skier for any damage, injury or death to person . . . that results from the other skiers' acts or omissions. Notwithstanding any other provision of law, the risk of collision with other skiers is not an inherent risk nor a risk assumed by a skier in an action by a skier against another skier." Wyo. Stat. Ann. § 1-1-123.4(c). Thus, Plaintiff contends that the Wyoming Legislature distinguishes between inherent risks of skiing and negligence from willful or wanton misconduct or risks not inherent in skiing. (Doc. 23 at 14).

8

Construing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has provided enough evidence to show there is an issue of material fact about whether Horne's actions constituted willful or wanton misconduct. As such, Defendants' Motion for Summary Judgment as it relates to Defendant Horne is DENIED.

### *Claims Against Defendant Grand Targhee*

During the hearing on Defendant's motion for summary judgment, for the first time Defendant Grand Targhee argued that it is not vicariously liable for the willful and wanton misconduct of its employee under *Campen v. Stone*, 635 P.2d 1121 (Wyo. 1981). Plaintiff argues that *Campen* only applies to the employer's liability for punitive damages and it does not apply to compensatory damages. Additionally, Plaintiff argues the employer can be held liable for the intentional torts of its employee when the employee is acting within the scope of employment, citing *Condict v. Condict,* 664 P.2d 131 (Wyo. 1983); *Sage Club v. Hunt, Wyo.,* 638 P.2d 161 (Wyo. 1981).

> In *Campen*, the Wyoming Supreme Court held,
>
> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a) the principal or managerial agent authorized the doing and manner of the act, or
>
> (b) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) the principal or a managerial agent of the principal ratified or approved the act.

*Campen*, 635 P.2d at 1125 (quoting Restatement, Torts 2d, § 909; Restatement, Agency 2d, § 217C).  Plaintiff argues that section (a) applies as Defendant Grand Targhee's managerial agent authorized Defendant Horne to use the TVT to rotate from the upper workstation to the lower workstation. Defendant Grand Targhee argues that Plaintiff cannot show that Grand Targhee authorized the manner in which Defendant Horne went down the TVT. Plaintiff argues Defendant Horne's conduct was willful and wanton because of his high speed, his chosen path down the TVT, and his disregard for the go slow signs. These factors are the manner that Defendant Horne went down the TVT. To support her claim that Defendant Horne's actions were willful and wanton, Plaintiff offers evidence of the "SLOW" signs, the Skier's Responsibility Code, the training on the Code Horne received from Grand Targhee, and the fact that Grand Targhee's posted rules. Thus, the evidence Plaintiff offered to support the willful and wanton claim contradict her assertion that Grand Targhee authorized the "manner" that Horne snowboarded down the TVT.  Thus, Plaintiff has not made a showing under *Campen* that Defendant Grand Targhee authorized the "doing and manner of the act."

Additionally, Plaintiff argues that *Campen* does not control this case. Rather, Defendant Grand Targhee is liable for the willful and wanton misconduct of its employee under *Sage Club* and *Condict*. In those cases, the Wyoming Supreme Court held that an employer can be held liable for the intentional torts of an employee when the employee commits an intentional tort within the scope of employment. *Condict v. Condict*, 664 P.2d 131 (Wyo. 1983); *Sage Club v. Hunt, Wyo.*, 638 P.2d 161 (Wyo. 1981). However, Plaintiff is not claiming that Horne committed an intentional tort in the course of his

employment. Rather, Plaintiffs claims are for negligence and gross negligence. (Doc. 1). However, the only way Plaintiffs can avoid the application of the waiver against Grand Targhee and GLT is to show that Horne's conduct was willful and wanton. The Wyoming Supreme Court did not extend the rule to also hold employers liable for an employee's willful or wanton misconduct.

Since Plaintiff alleges Defendant Horne's conduct was willful and wanton, the Court finds the *Campen* analysis applies, as it is the standard not only for punitive damages, but for assessing whether an employer is vicariously liable for the willful and wanton misconduct of its employees. The *Campen* court found the plaintiff could not recover punitive damages against the employer based solely on a finding that an employee was guilty of willful and wanton misconduct in the course of employment. *See Campen*, 635 P.2d at 1124–25. The *Campen* court reasoned it is improper to award punitive damages against an innocent party who is only liable vicariously. *Id.* While Plaintiff alleges her claim against Grand Targhee is also for compensatory damages, that claim rests on Grand Targhee's vicarious liability for Defendant Horne's alleged willful and wanton misconduct negating the protections of the waiver. In this case, the Court finds Grand Targhee cannot be held liable absent a showing of one of the *Campen* factors, specifically, that the principal or managerial agent authorized the doing and the manner of the act. Plaintiff failed to show Grand Targhee authorized Horne's descent on the TVT. As such, Defendants Grand Targhee Resorts, LLC and GLT Holdings LLC cannot be held liable for Horne's willful and wanton acts and Plaintiffs claims against them are DISMISSED WITH PREJUDICE from this case.

## CONCLUSION

For all of the above stated reasons, the Court finds there is a question of fact about whether Horne's engaged in willful or wanton misconduct at the time he collided with Plaintiff. Therefore, Plaintiff's claims against Defendant Horne are not barred by the Waiver. Additionally, the Court finds Grand Targhee is not vicariously liable for Defendant Horne's alleged willful and wanton misconduct.

IT IS ORDERED Defendants' Motion for Summary Judgment (Doc. 20) as it relates to Defendant Horne is DENIED.

IT IS FURTHER ORDERED Defendants' Motion for Summary Judgment (Doc. 20) as it relates to Defendant Grand Targhee Resorts and GLT Holdings is GRANTED.

IT IS FINALLY ORDERED Defendants Grand Targhee Resorts and GLT Holdings are DISMISSED WITH PREJUDICE.

Dated this __18th__ day of April, 2018.

_Nancy D. Freudenthal_
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE